## DAVID WALLACE vs. JAMES M. BEEBE & others.

A mercantile firm, whose business was divided into two departments, called the "lower department" and the "woollen department," employed A. in their service, with these stipulations: He "agreed to receive in compensation for his services five per cent. of the net profits of the lower department" "in lieu of salary, for the term of three years from January 1st 1860." "The profits of the lower department" were to be "the final results of the entire business of the said firm, after deducting the profits of the woollen department." The profits of the woollen department were to be ascertained by deducting from the gross profits thereof interest on the average value of the stock, and a sum for expenses in proportion to the amount of sales in the respective departments, and providing for losses on debts, and were to be credited to that department at the end of each season, or semi-annually. The interest of any party in any branch of the business, in lieu of salary, was to be deemed a matter of expense. A. had a right to draw for his expenses a certain sum annually, "and at the expiration of this agreement the balance of his interest in the business of the firm" was to be paid over to him "upon a settlement of the said firm's affairs." And if such interest of A. for three years should not equal the sum drawn by him for his expenses, he was not to be liable for any deficiency. And if he should die before the expiration of the contract, his interest was to cease upon the commencement of the following season after his death. At the end of the three years the firm had on hand, in the lower department, a large stock of goods, and had given orders for other goods, which they subsequently received, which were worth and were finally sold for more than they cost. *Held*, that A. was only entitled to his percentage of the profits on the goods actually sold within the three years.

BILL IN EQUITY brought to enforce the rights of the plaintiff under a contract with the defendants, of which the following are the material portions :

"This agreement, made this nineteenth day of December, A. D. eighteen hundred and fifty-nine, between David Wallace and James M. Beebe & Company, witnesseth:

"Whereas said Wallace, in lieu of salary, for the term of three years from January 1st 1860, has agreed to receive in compensation for his services five per cent. of the net profits of the lower department in the business of the firm of J. M. Beebe & Co. the said lower department consisting of and comprising all the various branches of the business of the said firm, save and except what is known as the woollen department, now, in order to the better understanding of the mode of settlement whereby the results of the business are made known, and that it may be clearly understood by the parties in interest, it is hereby agreed that the profits of the lower department are the final results of

the entire business of the said firm of Beebe & Co., after deducting the profits of the woollen department aforesaid, and the profits of the said woollen department shall be ascertained and agreed upon as follows, viz : that from the gross profits of the woollen department shall be deducted a yearly interest of six per cent. upon the amount of the average merchandise stock of that department during each year; also shall be deducted for expenses, in proportion as the amount of sales in the woollen department shall bear to the sales of the general department; and the net profits of the woollen department, after providing for interest and expenses as aforesaid and for losses on debts, shall be credited to the said woollen department as cash eight months from the expiration of each season, say from July first and January first succeeding the first of January 1860. And it is also understood and agreed that the interest of any party or parties in any branch or branches of the business of the said firm of Beebe & Co., in lieu of salary, shall be deemed a matter of expense, and enter into and be charged to the expense account.

" It is hereby understood and agreed that the said Wallace shall have the right to draw for his personal or other expenses the sum of two thousand dollars annually, during the space of the three years before mentioned, and at the expiration of this agreement the balance of his interest in the business of the firm shall be paid over to him, upon a settlement of the said firm's affairs, unless an earlier adjustment shall be made by mutual agreement; and if, through circumstances not now foreseen, the interest of the said Wallace in the business of the said firm for the term of three years aforesaid shall not equal the sum which he may have drawn for his personal or other expenses, and the amount of which is fixed as above, it is understood and agreed that he shall not be liable for any deficiency.

" And should the said Wallace decease before the expiration of this contract, or before its provisions are fulfilled and its relations terminated, then it is understood and agreed that his interest in the business aforesaid shall cease upon the commencement of the following season after said decease, either July 1st

or January 1st as the case may be, provided said decease shall take place on or before December 21st 1862 . . . . .

." Mr. Wallace agrees, during the three years before mentioned, to devote his whole and undivided energies to the promotion of the best interests of the firm of J. M. Beebe & Co., and to the successful prosecution of their business."

This agreement was subsequently modified by a supplementary one allowing him to draw, within the three years, the additional sum of nine thousand dollars at stated times.

The case was reserved by the chief justice for the determination of the full court, upon facts which are sufficiently stated in the opinion.

*J. G. Abbott & J. A. Loring,* for the plaintiff.

*B. R. Curtis & B. F. Brooks,* for the defendants.

GRAY, J. The decision of this case depends upon the construction to be given to the written contract made by the parties in December 1859, by which the plaintiff agreed to devote his whole energies to the business of the defendants during three years from the 1st of January 1860, and to receive, in lieu of salary, five per cent. of the net profits of the lower department of their business. It is admitted that this contract did not make the plaintiff a copartner with the defendants ; and that he served them faithfully for three years according to the contract, and is entitled to the compensation therein agreed upon. The court has not found it necessary, in interpreting this contract, to consider any facts which are not admitted by both parties.

The defendants, at the time of making the contract and during the three years mentioned therein, were a mercantile firm in Boston, carrying on a very large business in importing, buying, selling and dealing in foreign and domestic dry goods. Their business was divided into two distinct departments, one called the woollen department, which embraced their transactions in woollen goods, and the other the lower or general department, which included all the rest of their business ; and a separate account was kept of the profits and losses of each department. The defendants were accustomed to take semi-annual accounts of stock on the first days of January and July, in which they estimated the stock on hand at cost.

During these three years the defendants made large gains and profits, the greater part of which was made in the lower department; and on the 1st of January 1863 had on hand in that department a large stock of goods which had been bought for less than they were then actually worth ; and had given orders or made contracts for the delivery of many goods at prices lower than their then market value, which were subsequently delivered to them ; and afterwards sold all these goods.   The plaintiff claims to be entitled to a share in the profits made upon goods on hand on the 1st of January 1863, or ordered before that day, but not sold by the defendants until afterwards.   But this claim is inconsistent with the terms of the written contract, which expressly limits the duration of the plaintiff's interest, as well as of his services, in the defendants' business, to the three years which ended on that day.

The compensation for his services, which he agrees to receive, is declared to be " in lieu of salary, for the term of three years from January 1st 1860 ; " and is to be " five per cent. of the net profits of the lower department in the business of" the defendants.   These " net profits " consist of the money received from sales of goods, deducting their cost and expenses.   They are further defined as " the final results of the entire business of" the defendants, " after deducting the profits of the woollen department."   The mode prescribed for ascertaining the profits of the woollen department shows that the results and profits in which the plaintiff is to share are to be fixed at the end of the three years ; for in ascertaining the net profits of the woollen department, (which is to be done at the end of every half year, or " season," as it is called in the contract,) the amount to be deducted for expenses is to be in the proportion which the amount of sales in that department bears to the amount of sales in the general department; and this must necessarily be computed on the amount of sales already made, and not on the sales to be made at any indefinite future time.   The interest of any party (such as the plaintiff has) in any branch of the defendants' business, in lieu of salary, is to " be deemed a matter of expense, and enter into and be charged to the expense account."   It is

difficult to see how this can be done unless the amount of sales by which that interest is to be estimated is ascertained when the expense account is made up at the end of each half year. " The balance of his interest in the business of the firm " is agreed to be paid over to him " upon a settlement of said firm's affairs," " at the expiration of this agreement," which is at the end of the three years ; and could not be so paid if it were necessary to wait until all the goods on hand or ordered should have been sold. This " settlement of said firm's affairs " evidently means a making up of the accounts as they stand at that date, not a winding up of the whole business in which the firm is then engaged. The clause providing that the plaintiff shall not be required in any event to pay back sums drawn out by him according to the contract, although exceeding the amount of his interest, describes that interest as " the interest of the said Wallace in the business of the said firm for the term of three years aforesaid." The stipulation that, in case of his death, " his interest in the business aforesaid shall cease upon the commencement of the following season after said decease," also manifests the intention of the parties that his interest should be. fixed and determined at regular periods, and not left open for the result of future sales.

The mode suggested by the plaintiff, for estimating his share of the profits in goods unsold on the 1st of January 1863, is either to make an estimate of their actual value on that day, or to take the amount at which they are afterwards sold. But an estimate of their value on that day is not provided for in the contract, nor in fact made by the defendants in the ordinary management of their business, and would be no measure of the profits actually made upon sales. And to give the plaintiff an interest in the profits of sales made after that day would be to extend his interest beyond the term of three years to which by the contract it is limited, and after he had ceased to render the services for which his interest in the business was a compensation.

The plaintiff, under this contract, shares in the gains of al' business brought to a close within the three years, whenever

commenced; and in the profits of all sales made within that time, even of goods bought before the beginning of the term; but has no concern in sales made after his interest in the business has ceased.

The plaintiff is therefore entitled to recover five per cent. on the net profits of the business of the firm during the three years mentioned in his contract; to be estimated by deducting, from the amount of sales made during that time, the cost of the goods so sold, and expenses, including losses on debts for such sales; and the value of any such debts remaining uncollected at the end of the three years is to be ascertained by a master unless the parties agree.　　　　　　*Decree accordingly.*